<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWARD GAELICK and PSI CONSULTANTS, LLC, | : | |
| | : | |
| Plaintiffs, | : | **Civil Action No. 11-2464 (SRC)** |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, CIGNA HEALTH CORPORATION, CIGNA HEALTHCARE, INC. and JOHN DOES 1-40 (any individuals or entities whose identities are presently unknown who are or have been affiliates, subsidiaries, agents, employees or representatives of Connecticut General Life Insurance Company, CIGNA Health Corporation and CIGNA Healthcare Inc. Who harmed plaintiffs), | : | |
| Defendants. | : | |

**<u>CHESLER</u>**, District Judge

      This matter comes before the Court on the motion by Defendants Connecticut General Life Insurance Company, CIGNA Health Corporation, and CIGNA Healthcare, Inc. (collectively, "Defendants") to dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) [docket entry 15]. Plaintiffs Edward Gaelick and PSI Consultants, LLC (collectively, "Plaintiffs") have opposed the motion. The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, Defendants' motion will be granted.

I.  BACKGROUND

This action was initiated by Plaintiffs after Defendants declined to provide them with a price quote for one of their clients, only to provide a quote for that same client to Plaintiffs' competitor, which was ultimately accepted, causing Plaintiffs to forego a commission they allegedly would have made had Plaintiffs been the broker on the accepted deal.

Plaintiff PSI Consultants, LLC ("PSI") is an insurance broker whose business is to match companies seeking insurance with companies selling insurance. PSI has entered into producer agreements with Defendant Connecticut General Life Insurance Company ("CGLIC"), whereby it obtains quotes and solicits sales for insurance from CGLIC on behalf of its clients in return for a commission on any sale. According to the Amended Complaint, prior to becoming an insurance producer for CGLIC, CGLIC represented to PSI that CGLIC would (1) treat PSI the same as other CGLIC producers and (2) provide PSI with fair and reasonable insurance quotes "which were the same quotes that [CGLIC] would have provided its other producers for the same or similar clients." (Am. Compl. ¶ 18, June 2, 2011.)

Among PSI's clients was SAI Global US Holdings, Inc. ("SAI"), for whom PSI was broker of record. In or around June 2010, when SAI's group insurance policy was coming up for renewal with its then-insurer, PSI solicited a group insurance coverage quote from CGLIC on behalf of SAI, providing the insurance company with claims history through March 2010 for the proposed insured. Over the course of the next several months, CGLIC declined to supply PSI with a quote, advising it in October 2010 that SAI's claims history prevented CGLIC from providing a competitive estimate. On some unspecified date thereafter, PSI learned that CGLIC had provided a quote for SAI's group insurance to PSI's competitor, Mercer Health & Benefits

("Mercer"), even though the claims history provided by Mercer was significantly worse than that provided to CGLIC by PSI.  Ultimately, SAI accepted the quote provided by Mercer, terminated PSI, and appointed Mercer as its broker of record.  PSI avers that when it pressed CGLIC for an explanation, an unidentified representative of CGLIC "admitted [CGLIC] 'screwed up.'" (Am. Compl. at ¶ 31.)

According to Plaintiffs, CGLIC's actions have caused them to suffer damages in the form of lost commissions in connection with the SAI transaction.  As a result, Plaintiffs filed the Amended Complaint ("Complaint") on June 2, 2011, asserting the following claims: 1) tortious interference with prospective economic advantage, 2) tortious interference with contractual relations, 3) fraud, 4) negligent misrepresentation, 5) breach of the covenant of good faith and fair dealing, 6) negligence, 7) unjust enrichment, and 8) promissory estoppel.  Defendants filed the instant motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

**II.   LEGAL ANALYSIS**

    **A.     Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims have facial plausibility.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).  This means that the Complaint must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true.  *Id.* at 1965; *Phillips v. County of Allegheny*, 515 F.3d

224, 234 (3d Cir. 2008). The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B. Discussion

#### 1. First Count: Tortious Interference

Plaintiffs allege that Defendants intentionally and maliciously interfered with "PSI's contract with SAI" and with PSI's "expectation of obtaining further economic advantage as a result of [its] relationship with SAI." (Am. Comp. at 7.) As a result of this interference, Plaintiffs contend that they suffered substantial damages.

##### a. *Tortious Interference with Prospective Economic Advantage*

A complaint based on tortious interference with prospective economic advantage must allege facts that show some protectable right -- a prospective economic or contractual relationship. *Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (1989); *see also Valentine v. Bank of America*, No. 09-262, 2010 U.S. Dist. LEXIS 8546 at *8-9 (D.N.J. Feb. 1,

2010) (citing *Printing Mart* as the leading case in New Jersey regarding tortious interference with prospective economic advantage). Second, the complaint must allege facts claiming that the interference with the protectable right was done intentionally and with "malice." *Id.* Third, the complaint must allege facts leading to the conclusion that the interference caused the loss of the prospective gain. *Id.* Fourth, the complaint must allege that the injury caused damage. *Id.*

Defendants contend that Plaintiffs' claim for tortious interference with economic expectance should be dismissed because Plaintiffs do not sufficiently allege a protectable interest and because Plaintiffs cannot prove that Defendants acted with the requisite intent. However, this Court has little difficulty in concluding that Plaintiffs' Complaint does reveal a sufficient economic interest deserving of protection against interference. "Prospective economic relation" is broadly defined under New Jersey law:

> The expression, prospective contractual relation, is not used . . . in a strict, technical sense. It is not necessary that the prospective relation be expected to be reduced to a formal, binding contract. It may include prospective quasi-contractual or other restitutionary rights or even the voluntary conferring of commercial benefits in recognition of a moral obligation.
>
> Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and any other relations leading to potentially profitable contracts.

*Fineman v. Armstrong World Indus.*, 980 F.2d 171, 195 (3d Cir. 1992). The cases from the real estate world are particularly useful in addressing the interest for which Plaintiffs seek protection. In those cases, courts have found a protectable interest in favor of a real-estate broker who has gained a prospective interest in a commission by introducing a buyer to a seller of property. *See*

*Harris v. Perl*, 197 A.2d 359, 364 (1964) (holding that where the broker presents a prospective buyer and, on that basis negotiations ensue, the broker maintains a prospective economic advantage); *see also Printing Mart,* 563 A.2d at 38 (holding that when Printing Mart received specifications from Sharp to bid on a job, it received the "go ahead" to "pursue business" with Sharp and its pursuit of the printing contract was entitled to protection from unjustifiable interference). In the present matter, once Defendants received Plaintiffs' request to provide an insurance quote for SAI and engaged in the process of evaluating SAI's claims history to determine the appropriateness of providing a quote, a relationship was established with the potential of leading to a profitable arrangement where Plaintiffs could have earned a commission. It is that relationship that the law will protect from undue influence.

The next inquiry is whether the Amended Complaint sufficiently alleges that Defendants acted with the intent required to sustain a claim for tortious interference with a prospective economic relationship. "Interference is intentional 'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'" *Cedar Ridge Trailer Sales, Inc. v. Nat'l Cmty. Bank of N.J.*, 711 A.2d 338, 345 (N.J. Super. Ct. App. Div. 1998). Accordingly, to maintain a claim for tortious interference, the plaintiff must allege facts that would support a finding that the defendant acted with the specific intent to injure the plaintiff and to interfere with its contract or prospective business relationship. *See Woods Corp. Assocs. v. Signet Star Holdings*, 910 F. Supp. 1019, 1032 (D.N.J. 1995).

Plainly, the Amended Complaint does not state, in even a conclusory manner, that the conduct of the Defendants was intentional. Throughout the entire Complaint, Plaintiffs state that CGLIC "screwed up" in failing to provide PSI with an insurance quote for SAI. Such a mistake

6

does not amount to the intentional conduct calculated to interfere with a prospective business relationship that is required for this claim to succeed. *Compare with Printing Mart*, 563 A.2d at 40 (defendant gave false bids on behalf of two companies showing that it intended Printing Mart to lose the job and that his actions were calculated to produce that result). Therefore, because Plaintiffs cannot show that Defendants acted with the requisite intent when they refused to provide them with an insurance quote, they have not pled sufficient facts to establish a claim for tortious interference with a prospective economic relationship. As such, this claim will be dismissed.

      b.  *Tortious Interference with Contractual Relations*

  To establish tortious interference with an existing contract, a plaintiff must prove: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference. *Digiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 3d 552, 558 (D.N.J. 2002). While this Court does not believe that Plaintiffs have successfully pled the existence of a contract between PSI and SAI, this claim will be dismissed since, as aforementioned, Plaintiffs have not established that Defendants acted with the requisite intent to injure Plaintiffs and interfere with their contractual relations with SAI.

    2.  <u>Second Count: Fraud and Negligent Misrepresentation</u>

  In their Amended Complaint, Plaintiffs contend that the Defendants made the following fraudulent and negligent misrepresentations which Plaintiffs relied upon to their detriment:

> (1) That they would provide PSI with the best quotes available to PSI's clients and that they would provide PSI the same quotes as they provided other producers;

>   (2) That they could not provide PSI a quote for SAI because the quote would be uncompetitive; and
>
>   (3) That if PSI was refused a quote for one of its clients because CIGNA could not provide a competitive quote for that client, that CIGNA would not later provide a competitive quote for the same client to another producer based on similar or worse claims information.

   a.   *Fraud*

To state a claim for fraud in New Jersey, a plaintiff must allege: (1) defendant made a false representation of fact; (2) defendant knew or believed that the representation was false; (3) defendant intended to deceive the plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced to take action upon it, and (5) as a result of plaintiff's reliance upon such statements, it sustained damages. *Cohen v. Telsey*, No. 09-2033, 2009 U.S. Dist. LEXIS 101696 at *33 (D.N.J. Nov. 2, 2009). Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* Rule 9(b)'s heightened pleadings standard "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." *Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1417. "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "Even when the defendant retains control over the flow of information, boilerplate and conclusory allegations will not suffice. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002). Plaintiffs must accompany their legal theory with factual allegations

that make their theoretically viable claim plausible." *Id.*

Here, Plaintiffs' fraud claim does not meet the stringent pleading requirements of Rule 9(b). Plaintiffs do not state with particularity the circumstances of the alleged fraud or otherwise inject the requisite precision into their allegations. In fact, the Amended Complaint is completely devoid of any indication of the speaker of the alleged misrepresentations, the recipient of the alleged misrepresentations, when the alleged misrepresentations were made, or where the alleged misrepresentations were made. In addition, Plaintiffs' Complaint insufficiently pleads the required element of intent. Although "[m]alice, intent, knowledge and other conditions of mind of a person may be alleged generally," a plaintiff is still required to provide factual allegations that support his legal theory. *Id.* While Plaintiffs aver that each of the aforementioned representations were made "knowingly," Plaintiffs make no allegation that CGLIC made any representation with the intention that Plaintiffs would rely thereon, even in a wholly conclusory fashion. *See Metric Inv. v. Patterson*, 236 A.2d 187, 188 (N.J. Super. Ct. Law Div. 1967) (holding that the "vital omission in plaintiff's proof [was] any showing that the representations were made. . . with the intent that [plaintiff] or someone similarly situated should rely on them."). As such, Plaintiffs have not successfully asserted a fraud claim against Defendants and this claim will be dismissed.

        b.    *Negligent Misrepresentation*

In New Jersey, any tort of negligence "requires the plaintiff to prove that the putative tortfeasor breached a duty of care owed to plaintiff and that plaintiff suffered damages proximately caused by that breach." *Highlands Ins. Co. v. Hobbs Group*, 373 F.3d 347, 351 (3d Cir. 2004). The elements of negligent misrepresentation are essentially the same as those of

9

common law fraud except negligent misrepresentation does not require scienter. *Cohen*, 2009 U.S. Dist. LEXIS 101696 at *41. To prove a claim of negligent misrepresentation under New Jersey law, the plaintiff must demonstrate that "1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages." *McCall v. Metropolitan Life. Ins.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996).

Thus, the first issue to be addressed is whether Defendants owed a duty to Plaintiffs. "The question of whether a duty exists is a matter of law properly decided by the court, not the jury." *Carter v. Lincoln-Mercury, Inc. v. EMAR Group, Inc.*, 638 A.2d 1288, 1294 (1994). To create legal liability upon a defendant for negligence, the injury which is the basis of the action must be predicated on the violation, neglect, or omission of some legal duty which the defendant owed to the injured party. *Pyle v. Fidelity Philadelphia Trust Co.*, 10 A.2d 482, 484 (1940). In determining whether a duty of care exists, a court's "analysis involves identifying, weighing, and balancing several factors -- the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Id.* Here, Plaintiffs contend that "the agreements and ongoing relationship between the parties affords PSI a special relationship with [Defendants]" and that Defendants "owed PSI a duty as a result of the relationship." (Am. Compl. at 3, 10.) However, Plaintiffs fail to indicate how or why this "special relationship" gives rise to a legal duty or what that duty entails. In addition, Plaintiffs have not pointed to any case law in support of their proposition that a legal duty exists between an insurance company and an insurance broker. *See Saltiel v. GSI Consultants, Inc.*, 788

A.2d 268, 280 (2002) ("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law"); *see also, e.g., Carter*, 638 A.2d at 1291-92 (recognizing that "[a]t common law both agents and brokers, when acting on behalf of an insured, owe the insured a duty of due care"); *Morlino v. Medical Ctr. of Ocean County*, 706 A.2d 721 (1998) (recognizing a duty imposed by law requiring physician to act with required knowledge, skill and care in diagnosis and treatment of patient); *James v. Bessemer Processing, Co., Inc.* 714 A.2d 898 (1998) (recognizing a manufacturer's duty at law to warn about potentially harmful effects of a product). As such, the Court is unable to discern any duty at law owed to the Plaintiffs by Defendants that is independent of the duties that arose under the business relationship between the parties. Because Plaintiffs have insufficiently pled the existence of a duty owed to them by Defendants, Defendants' motion to dismiss the Second Count of the Amended Complaint will be granted.[1]

        3.        <u>Third Count: Breach of the Covenant of Good Faith and Fair Dealing</u>

In the Third Count of the Amended Complaint, Plaintiffs argue that Defendants breached the implied covenant of good faith and fair dealing when, after entering into several producer agreements with Plaintiffs, Defendants refused to provide PSI with an insurance quote for SAI yet provided one to Mercer for the same client. Every contract in New Jersey contains an implied covenant of good faith and fair dealing. *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228

---

[1] In the Fourth Count of their Amended Complaint, Plaintiffs assert a negligence claim against Defendants. In order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages. *Loceria Colombiana, S.A. v. Zrike Co.*, No. 10-5329, 2011 U.S. Dist. LEXIS 17836 at *8-9 (D.N.J. Feb. 22, 2011). Because Plaintiffs have provided no facts or law to support their conclusory allegation that Defendants owe them a legal duty, this count of the Complaint will also be dismissed.

F.3d 275, 288 (3d Cir. 2000). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Id.* The covenant operates to ensure that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder, Inc. v. Borden, Inc.* 690, A.2d 575, 587 (1997).

Plaintiffs, however, point to no evidence of any malice or bad motive on the part of Defendants, a deficiency which is fatal to their claim. The Supreme Court of New Jersey has clearly held that bad motive is "essential" to a claim for breach of the implied covenant of good faith and fair dealing.

> [A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive. *Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance. Bad motive or intention is essential*, for, as stated by the United States Court of Appeals for the Seventh Circuit, "[c]ontract law does not require parties to behave altruistically toward each other; it does not proceed on the philosophy that I am my brother's keeper."

*Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001) (citations omitted) (quotations in original) (emphasis added). In the present matter, Defendants erred in failing to provide Plaintiffs with an insurance quote for PSI and were not acting with bad intentions or motive. As Plaintiffs themselves repeatedly point out, CGLIC simply "screwed up." Indeed, "a party does not breach the implied covenant of good faith and fair dealing merely because its decisions disadvantaged another party." *Mollo v. Pasaic Valley Sewarge Comm'rs*, No. 07-1655, 2009 U.S. Dist. LEXIS 121009 at \*52 (D.N.J. Dec. 30, 2009). Because Plaintiffs have not established an essential element of a good faith and fair dealing violation, this Count will be dismissed.

       4.       Fifth Count: Unjust Enrichment

In the Fifth Count of their Amended Complaint, Plaintiffs contend that Defendants "unjustly refused to provide PSI a quote for SAI" and that as a result of this unjust action, Defendants benefitted "by receiving additional business from Mercer and improving its relationship with Mercer." (Am. Compl. at 11.) Plaintiffs clearly misunderstand a cause of action for unjust enrichment. To establish a claim for unjust enrichment, a plaintiff must prove that defendant received a benefit *from plaintiff* and that retention of that benefit without payment would be unjust. *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 541 (N.J. 1994) (emphasis added). The unjust enrichment doctrine "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id*. Here, Plaintiffs do not claim that they conferred any benefit on Defendants, the remuneration of which would unjustly enrich Defendants beyond their contractual rights. Instead, Plaintiffs refer to an allegedly unjust action committed by Defendants which earned them a benefit from Mercer, a non-party. As such, Defendants' motion to dismiss Count Five will be granted.

       5.       Sixth Count: Promissory Estoppel

Under New Jersey law, to plead a cause of action for promissory estoppel, Plaintiffs must sufficiently allege the following elements: (1) a clear and definite promise by the promisor; (2) that the promise was made with the expectation that the promisee would rely thereon; (3) that the promisee in fact reasonably relied on the promise; and (4) that a detriment of a definite and substantial nature was incurred in reliance on the promise. *Royal Assocs. v. Concannon*, 490 A.2d 357, 361 (N.J. Super. Ct. App. Div. 1985). In their Amended Complaint, Plaintiffs claim

that Defendants made three distinct promises:

> (1) That PSI would receive the best quotes from CIGNA available for PSI's clients;
>
> (2) That PSI would receive the same quotes as other CIGNA producers for same or similar clients; and,
>
> (3) That if PSI was refused a quote for one of its clients because CIGNA could not provide a competitive quote for that client, that CIGNA would not later provide a competitive quote for the same client to another producer based on similar or worse claims information.

The Complaint goes on to state that "CIGNA expected that PSI would rely upon these promises," that "PSI relied on these promises," and that "as a direct and proximate result of its reliance on the promises [], PSI sustained substantial damages." (Am. Compl. at 12.) In this Count, Plaintiffs merely recite the elements of a promissory estoppel action and make no pretense of offering the necessary factual detail to "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Iqbal*, 129 S. Ct. at 1949. Even on a motion to dismiss, this "formulaic recitation of the elements of a cause of action will not do." *Id.* Therefore, Defendants' motion to dismiss the Sixth Count of the Complaint will be granted.

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss. An appropriate form of Order will be filed together with this Opinion.

   s/ Stanley R. Chesler   
STANLEY R. CHESLER
United States District Judge

DATED: August 25, 2011